IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RICHARDSON INTERNATIONAL (US) LIMITED, and NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,<br><br>     Plaintiffs,<br><br>vs.<br><br>BUHLER INC.,<br><br>     Defendant. | 8:14CV148<br><br>MEMORANDUM AND ORDER |

This matter is before the court on defendant Buhler's motion in limine to exclude certain testimony of the plaintiffs' experts Kenneth R. Scurto ("Scurto"), James E. Maness ("Maness"), and Dr. Thomas Schnell ("Dr. Schnell"), Filing No. 80. Buhler seeks exclusion of the testimony under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993).

I. BACKGROUND

The experts' reports have been filed. Filing No. 83-4, Ex. D, Scurto Report ("Rep't"); Filing No. 83-8, Ex. H, Maness Rep't; Filing No. 83-11, Ex. K, Schnell Rep't. Also, all of the experts were deposed. Filing No. 85-3, Ex. 3, Scurto Deposition ("Dep."); Filing No. 85-7, Schnell Dep.; Filing No. 85-11, Maness Dep.

The record shows plaintiffs' expert Kenneth Scurto is a fire investigator with over 36 years of experience in fire investigations. He has had training in all aspects of fire suppression. He was Deputy Inspector with the Nebraska State Fire Marshal's Office from 1985 to 2002. He was a Fire Investigator with Leuwerke and Associates for four

years and has worked at Independent Forensic Investigations Corporation for more than ten years.  He is certified as a Fire and Explosion Investigator by the National Association of Fire Investigators, and he has held that certification for eleven years.  He is also a member of National Association of Fire Investigators, International Association of Arson Investigators, Nebraska Chapter of the International Association of Arson Investigators, Nebraska Society of Fire Service Instructors, and the Nebraska State Volunteer Firefighters Association.  He has investigated almost 1800 fires and explosions and has testified in numerous cases.

He was retained to conduct a fire investigation of the June 3, 2013 fire at the Richardson facility in South Sioux City, Nebraska.  He performed a half-day physical inspection, interviewed several witnesses, and reviewed system data.  The system data could not be printed, but Scurto viewed the data and took notes on it.

The defendant was provided an opportunity to conduct an investigation into the fire and to freely inspect the facility and equipment involved in the fire and was notified that cleanup, remediation, and repairs would commence after that.  The plaintiffs have shown that Fire Investigator Kenneth Ward and Mechanical Engineer Duane Wolf investigated on behalf of the defendant on June 8, 2013, and June 10, 2013.  Filing No. 85-2, Ex. 21, Rick Martin Dep. at 89-96.  Both Ward and Wolf were disclosed in initial disclosures, but neither has been designated as an expert witness in the case.

The record shows the control system data was only kept on the server for 90 days after the fire and was then purged under the standard protocol of the server.  Filing No. 85-20, Ex. 20, J. Olson Dep. at 61, 72-73.  The plaintiffs and its expert were not aware that the server did not permit printouts or reports of material, just stored raw data.

2

*Id.* at 65-66.  Buhler's expert, Rick Martin acknowledged that there is no evidence of intentional spoliation of the system data.  Filing No. 85-21, Ex. 21, Martin Dep. at 65.  He testified he was able to form a cause and origin opinion without viewing any of the control data information.

Scurto's cause and origin opinions are based on application of the techniques set forth in the National Fire and Protection Association document 921, Guide for Fire and Explosion Investigations and the National Fire and Protection Association ("NFPA") Document 1033, Standard for Professional Qualifications for Fire Investigator.  He also based his opinion on his observations of burn patterns and heat damage, witness interviews, Richardson employee deposition transcripts, company documents including coated product pre-op checklist, records on ovens, 1078 multigrain granola batch details, oven product history, the Aeroglide Safety Procedures page from the owner's manual, the Buhler service contract, and hand-written statements of Richardson employees as well as his education, training and experience.

James Maness has a B.S. in Mechanical Engineering from the University of Maryland.  From 1967 through 1974, Maness was a Research Engineer with the National Bureau of Standards, Consumer Product Safety Research and High Temperature Measurements group, publishing technical papers on research dealing with issues including fire-related consumer product safety.  He worked as the Director of Technical Services for the National Grain & Feed Association from 1974 to 1984.  In that capacity he was responsible for safety and health programs, grain grades and weights issues, environmental quality concerns, research, energy conservation and various engineering and technical programs.  He is presently an independent safety

consultant. He offered opinions on industry standards and engineering practices, including NFPA and Factory Mutual ("FM"). He identified contributing factors that influenced the event and how it could have been prevented. He further opined on Buhler's failure to follow recognized standards, guidelines and regulations pertaining to the operation of the dryer and the responsibility of Buhler to provide a safe design. Also, he offered an opinion on Richardson's operational practices as far as housekeeping practices to minimize the risk of fires and explosions. He relied on the information provided by counsel, including Scurto's report, depositions, deposition exhibits, documents produced in discovery, witnesses' statements and comments, the fire marshal report, NFPA 61—Standards for the Prevention of Fires and Explosions in Agricultural and Food Processing Facilities (2002), NFPA 86—Standards for Ovens and Furnaces (2007), FM Global Property Loss Prevention Data Sheets 6-9 for Industrial Ovens and Dryers, and appropriate portions of Occupational Safety and Health Administration's ("OSHA") General Industry Standards, 29 C.F.R. 1910.

Thomas Schnell has a Ph. D. in industrial design. He has been employed as a professor at the University of Iowa for eighteen years. Dr. Schnell teaches and conducts research in the area of Safety Engineering and Human Factors. He has taught such subjects as Industrial Engineering Design, Operational Systems, Human Factors, Quality Engineering, Ergonomic Design, Quality Control, and Human Performance in Engineered Systems. He was asked to give an opinion on a design defect and adequacy of warnings and instructions from a safety engineering and human factors perspective. After the defendant belatedly produced a hazard analysis, Dr. Schnell reviewed and evaluated it.

Buhler challenges all of Scurto's opinion testimony as relying on allegedly spoliated evidence, contending that Scurto's opinions are inextricably intertwined with critical, missing data. It argues that Richardson should not be allowed to advance causation theories that depend upon data that they failed to preserve. Alternatively, it asks the court to exclude the portions of Scurto's report that rely extensively on the spoliated control systems data. Also, it argues that Scurto should be precluded from testifying at trial in a manner inconsistent with admissions he made at his deposition.

Buhler challenges Maness's opinions 1 (adequacy of warnings and instructions) and 4 (adequacy of housekeeping and cleaning) as lacking evidentiary support and based on missing data. It argues that Maness did not offer independent opinions on the subject of the origin and cause of the fire, but relied on the cause and origin opinions of Scurto and the Fire Marshal. It contends Maness's opinions are not supported by Scurto's or the Fire Marshal's opinions. Buhler also challenges Maness's supplemental report (regarding NFPA 86 (1999 edition) standards) as untimely.

With respect to Dr. Schnell's testimony, Buhler asserts his opinions 1 (defective design), 3 (warnings system), and 4 (adequacy of hazard analysis) are outside Dr. Schnell's area of expertise and are also improper rebuttal evidence and should be excluded. Buhler contends that the deadline for disclosure of the plaintiffs' expert witness reports was September 9, 2016.[1] On that date, plaintiffs' counsel sent defense counsel an email notifying him that Richardson's warnings/human factors expert, Tom Schnell, was out of the country working on a Department of Defense contract and that a

---

[1] The deadline for disclosure of the defendant's expert reports was November 4, 2016, and the deadline for plaintiffs to disclose additional experts to refute the defendant's experts was November 18, 2016.

5

report would not be ready until Dr. Schnell returned three weeks later. Filing No. 91-1, Ex. L, Hartnett Affidavit ("Aff."), Ex. L1, Hartnett-Hicks Email. Buhler's counsel, as a matter of professional courtesy, offered to extend the deadline for disclosure of the report by one week, but not longer. *Id.* The plaintiffs contend that Buhler withheld documents critical to Dr. Schnell's opinions, namely, its "hazard analysis," until after the plaintiffs' expert report deadline. The hazard analysis was produced on October 20, 2016, at the deposition of Shane Parker, forty-one days after the report deadline. Richardson contends it should have been produced in initial disclosures and in response to document requests. Dr. Scurto's report was produced to the defendant on November 28, 2016. Dr. Scurto was deposed on December 12, 2016.

II.  LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that: "(1) the evidence must be based on scientific, technical or other specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy." *Kudabeck v. Kroger Co.*, 338 F.3d 856, 859 (8th Cir. 2003). Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Id.* at 860.

The proponent of expert testimony bears the burden of providing admissibility beyond a preponderance of the evidence. *Lauzon v. Senco Prods.*, 270 F.3d 681, 686 (8th Cir. 2001). "The rule clearly 'is one of admissibility rather than exclusion.'" *Id.* (quoting *Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir.1991)).

When faced with a proffer of expert testimony, trial judges are charged with the "gatekeeping" responsibility of ensuring that all expert evidence admitted is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993); *United States v. Merrell*, 842 F.3d 577, 582 (8th Cir. 2016). A trial court must be given wide latitude in determining whether an expert's testimony is reliable. *See Kumho Tire,* 526 U.S. at 152. This analysis requires that the court make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology . . . can be [properly] applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

"In diversity cases, a district court applies federal law to the issue of adverse inference instructions for spoliation of evidence." *Burris v. Gulf Underwriters Ins. Co.,* 787 F.3d 875, 879 (8th Cir. 2015). Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011). Under federal law, "in order for an adverse inference instruction for spoliation to be warranted, a district court is required to make two findings: (1) there must be a finding of intentional destruction indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party." *Burris,* 787 F.3d at 879; see *Bakhtiari v. Lutz,* 507 F.3d 1132, 1136 (8th Cir. 2007) (to find spoliation, the court must determine that the party who held the evidence intentionally destroyed it with a desire to suppress the truth); *Stevenson v. Union Pacific R. Co.*, 354 F.3d 739, 748 (8th Cir. 2004) (the party deprived of access to the evidence

7

must also show prejudice). Federal Courts may impose a range of sanctions and remedies when a party abuses the judicial process by destroying evidence. *Stevenson, 354 F.3d at 745*–46. This includes giving an "adverse inference" instruction, precluding the offending party from offering evidence on the matter, or even settling a disputed matter of fact. *Id.* at 750–51.

III.   DISCUSSION

The court has considered the evidence submitted by the parties and finds that all three experts are eminently qualified to render opinions on the challenged topics. With respect to Scurto's cause and origin testimony, the defendant's challenge is primarily based on its assertion of spoliation of evidence. It appears that the defendant had the same opportunity to view the control system data that the plaintiffs did. The plaintiffs have shown that defendant's experts and employees had the opportunity to investigate the scene and could have accessed the information before the server was purged. Also, the defendant's expert, Rick Martin, was able to form his opinion without the information. The defendant has not asserted that the spoliation was intentional and the defendant does not appear to have been prejudiced. The court has not been presented with evidence that shows the failure to maintain the information was anything but inadvertent. Accordingly, the court finds that exclusion of Scurto's testimony because of the alleged spoliation is not warranted.

Even if it were, the remedy would be an adverse inference instruction and not complete exclusion of the testimony. Depending on the evidence at trial, the court can revisit the issue. The parties are cautioned, however, that no adverse inference instruction will be given without informing the jury that Fire Investigator Kenneth Ward

8

and Mechanical Engineer Duane Wolf investigated on behalf of the defendant on June 8, 2013, and June 10, 2013, but were not designated as experts.

The plaintiffs have shown that Scurto's opinions are relevant and reliable and are based on sound methodology that can be applied to the facts in this case. His opinions are based on a physical investigation of the scene on June 4, 2013, a review of the file materials in this matter, and interviews of key witnesses. The control system data was only one component of his investigation. His observations and notes on the data were included in his report and were available to the defendant's expert. Other criticisms of Scurto's testimony go to weight, not admissibility.

The plaintiffs have also shown that Maness's opinions are relevant and reliable. The fact that he did not make a physical inspection of the scene is the subject of cross-examination and not a ground to exclude the testimony. The defendant's criticisms go more to the weight than to the admissibility of the evidence. The defendant's assertions of untimely disclosure are unavailing. The record shows that Maness timely supplemented his report in that he testified at his deposition on December 5, 2016, that he would offer an opinion on the 1999 version of the NFPA. He also supplemented his opinion in writing on November 30, 2016. He was questioned extensively about the 1999 version at his deposition and the defendant's expert would have been aware of the supplemented opinion at his deposition on December 15, 2016.

As to Dr. Schnell, the court rejects the defendant's argument that the untimely disclosure warrants exclusion of Schnell's testimony. The defendant appears to engage in gamesmanship. The plaintiffs have shown that the hazard analysis was belatedly

produced. The hazard analysis affected the expert's opinions on warnings and instructions.

The defendant's argument that after the defendant refused to extend the time for disclosure of the report beyond a week, the plaintiffs were left with the choice of either seeking leave of court to file the report out of time or do without the proposed case-in-chief expert also lacks merit. If faced with such a motion under the circumstances presented here—an expert overseas for up to three weeks—the court would most likely have granted an extension. Notably, the defendant was aware of the identity and general subject matter of the report since Dr. Schnell had been disclosed as an expert earlier. The defendant has not been prejudiced by the purported untimeliness of the report, Buhler was in possession of all the information it needed before its expert was deposed. Under the circumstances, the court will not exclude the testimony and the court finds it can be presented in the plaintiffs' case in chief rather than as rebuttal testimony.

The court also rejects the defendant's argument that Dr. Schnell's opinions on design are outside the area of his expertise. His opinions on design defects and deficiencies in the owners' manual, warnings and instructions were expressed from the perspective of safety engineering and human factors. Dr. Schnell is an Industrial Engineer with expertise in safety engineering. Again, the defendant's criticisms go to the weight rather than the admissibility of the evidence and are properly the subject of cross-examination. Accordingly,

IT IS ORDERED that:

1. Defendant Buhler's motion in limine to exclude certain testimony of the plaintiffs' experts Kenneth R. Scurto, James E. Maness, and Dr. Thomas Schnell (Filing No. 80) is denied.

Dated this 28th day of March, 2017.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge