IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RICHARDSON INTERNATIONAL (U.S.) LIMITED, and NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,

Plaintiffs,

v.

BUHLER INC.,

Defendant.

CASE NO. 8:14-cv-00148

**ORDER ON FINAL PRETRIAL CONFERENCE**

A final pretrial conference was held on the 11th day of April, 2017. Appearing for the parties as counsel were:

1. For plaintiffs:

   Nile Hicks (admitted *pro hac vice*)
   Beattie Law Firm, P.C.
   4300 Grand Avenue
   Des Moines, IA 50312
   Telephone: (515) 263-1000
   Email: nile.hicks@beattielawfirm.com
   Note: Don Beattie will be participating in trial as co-counsel for Plaintiff but currently is unable to appear at the Pretrial Conference due to an unavoidable conflict in Case No. 5:13-cv-04106-CJW (N.D. Iowa). Should the conflict in the Bruhn matter be resolved, Attorney Beattie is expected to be present.

2. For defendant:

   James J. Hartnett (admitted *pro hac vice*)
   Rachel A. Osdoba (admitted *pro hac vice*)
   Faegre Baker Daniels LLP
   2200 Wells Fargo Center
   90 South Seventh Street

Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Fax: (612) 766-1600
Email: james.hartnett@faegrebd.com
Email: rachel.osdoba@faegrebd.com

**(A)** **Exhibits.** See attached Exhibit Lists and the parties' objections noted in the exhibit lists.

**(B)** **Uncontroverted Facts.** The parties have agreed that the following may be accepted as established facts for purposes of this case only:

This case is about a fire that occurred at a grain processing plant located in South Sioux City Nebraska on June 3, 2013. Richardson International was the owner of the plant at the time of the fire. Nationwide Agribusiness Insurance Company is the insurance company for Richardson International that paid to repair the plant after the fire. A reference to Nationwide Agribusiness can be considered a reference to Richardson during the course of this litigation. Buhler, Inc. is the owner of a company that supplied commercial granola drying equipment to the plant in 1994 and 2008, and provided additional services in the years leading up to the fire.

Plaintiff Nationwide Agribusiness Insurance Company, as subrogated party for the rights and interests of Richardson International ("Nationwide Insurance") alleges that faulty design of equipment designed, manufactured, and supplied by Buhler was responsible for the damage claimed in this matter. Buhler denies that any fault in its design, manufacturing, or supply of the equipment caused the fire and denies any responsibility for the claimed damages.

Nationwide Insurance further alleges that the warnings and instructions provided by Buhler were inadequate. Buhler denies any fault in its warnings and instructions, and denies any fault in causing the fire.

Buhler claims that the fire was caused by faulty operation and maintenance of the equipment by Richardson. Nationwide Insurance denies that the fire was caused by faulty operation and maintenance of the equipment by Richardson.

2

Nationwide Insurance has asserted damages consisting of equipment repair, replacement, facility cleaning, business interruption, and product loss. Buhler denies responsibility for these damages.

Documents in this case from 2007 and 2008 may refer to 21st Century Grain and Aeroglide Corporation, but for the purposes of this case, you should assume that 21st Century Grain is the same as Richardson and Aeroglide Corporation is the same as Buhler. For the purposes of this case summary, I will refer to the owner of the plant as Richardson and the supplier of the equipment as Buhler.

The granola drying equipment that Richardson purchased from Buhler in 2007 was intended to be used as part of a production line to make granola. Granola is made by mixing oat flakes and other dry ingredients with a liquid syrup that binds the dry products together into clumps. The equipment that Richardson purchased from Buhler in 2007 was intended to dry the granola. The dryer at issue in this case was the second granola production dryer at the plant, known as Granola Line 2.

**(C)** **Controverted and Unresolved Issues.** The issues remaining to be determined and unresolved matters for the court's attention are:

[List all legal issues remaining to be determined, setting out in detail each element of the claim or defense which is genuinely controverted (including issues on the merits and issues of jurisdiction, venue, joinder, validity of appointment of a representative of a party, class action, substitution of parties, attorney's fee and applicable law under which it is claimed, and prejudgment interest). Specify any special damages or permanent injuries claimed. In any negligence action, specify elements of negligence and contributory negligence, if any. Any other unresolved matters requiring the court's attention, such as possible consolidation for trial, bifurcated trials on specified issues, and pending motions, shall also be listed.]

## I. Choice of Law

1. See Defendant's Summary Judgment and Plaintiff's Resistance. Defendant claims that North Carolina substantive law applies. Plaintiff denies that North Carolina substantive law applies and asserts that Nebraska law applies.

US.111075974.02

## II. Plaintiff's Causes of Action and Specifications of Fault

Plaintiff asserts the following causes of action and specifications of fault, which are denied by Defendant.

1. Defendant is strictly liable for failing to design adequate fire suppression into the granola dryer supplied to Plaintiff;

2. Defendant is strictly liable for designing a dryer in violation of NFPA 86 (1999) § 3-2.1 in failing to design out the fire hazards inherent in equipment operating at elevated temperatures;

3. Defendant is strictly liable for designing a dryer in violation of NFPA 86 (1999) Chapter 11 in failing to design the granola dryer with an adequate fire protection system;

4. Defendant is strictly liable for violating NFPA 86 (1999) § 1-3.4 in failing to comply with NFPA 86 requirements and demonstrating and documenting the safety and validity of the design of the granola dryer;

5. Defendant is strictly liable for designing a dryer in violation of NFPA 86 (2007) § 5.2.1 in failing to design out and minimize the fire hazard inherent in equipment operating at elevated temperatures;

6. Defendant is strictly liable for designing a dryer in violation of NFPA 86 (2007) § 14.1 in failing to conduct a study as to the need for fixed or portable fire protection systems for the granola dryer;

7. Defendant is strictly liable for designing a dryer in violation of FM Global DS 6-9 (2003) § 2.2.4.1 in failing to provide automatic fire suppression for the granola dryer;

8. Defendant is strictly liable for designing a dryer in violation of NFPA and FM Global standards in violation of the contract terms;

9. Defendant is strictly liable for failing to adequately warn Plaintiff concerning the requirements for fire suppression on the granola dryer;

10. Defendant is strictly liable for failing to adequately warn Plaintiff concerning the requirements under NFPA 86 (1999) for fire suppression on the granola dryer;

11. Defendant is strictly liable for failing to adequately warn Plaintiff concerning the requirements under NFPA 86 (2003) for fire suppression on the granola dryer;

12. Defendant is strictly liable for failing to adequately warn Plaintiff concerning the requirements under NFPA 86 (2007) for fire suppression on the granola dryer;

4

13. Defendant is strictly liable for failing to adequately warn Plaintiff concerning the requirements under FM Global DS 6-9 (2003) for fire suppression on the granola dryer;

14. Defendant is strictly liable for failing to adequately warn Plaintiff concerning what to do in the event they smell a fire in the dryer by failing to place instructions on the dryer itself;

15. Defendant is strictly liable for failing to adequately warn Plaintiff concerning the need to keep doors closed on the dryer until a fire has dissipated and it is safe to enter the dryer;

16. Defendant is negligent for failing to design adequate fire suppression into the granola dryer supplied to Plaintiff;

17. Defendant is negligent for designing a dryer in violation of NFPA 86 (1999) § 3-2.1 in failing to design out the fire hazards inherent in equipment operating at elevated temperatures;

18. Defendant is negligent for designing a dryer in violation of NFPA 86 (1999) Chapter 11 in failing to design the granola dryer with an adequate fire protection system;

19. Defendant is negligent for violating NFPA 86 (1999) § 1-3.4 in failing to comply with NFPA 86 requirements and demonstrating and documenting the safety and validity of the design of the granola dryer;

20. Defendant is negligent for designing a dryer in violation of NFPA 86 (2007) § 5.2.1 in failing to design out and minimize the fire hazard inherent in equipment operating at elevated temperatures;

21. Defendant is negligent for designing a dryer in violation of NFPA 86 (2007) § 14.1 in failing to conduct a study as to the need for fixed or portable fire protection systems for the granola dryer;

22. Defendant is negligent for designing a dryer in violation of FM Global DS 6-9 (2003) § 2.2.4.1 in failing to provide automatic fire suppression for the granola dryer;

23. Defendant is negligent for designing a dryer in violation of NFPA and FM Global standards in violation of the contract terms;

24. Defendant is negligent for failing to adequately warn Plaintiff concerning the requirements for fire suppression on the granola dryer;

25. Defendant is negligent for failing to adequately warn Plaintiff concerning the requirements under NFPA 86 (1999) for fire suppression on the granola dryer;

26. Defendant is negligent for failing to adequately warn Plaintiff concerning the requirements under NFPA 86 (2003) for fire suppression on the granola dryer;

27. Defendant is negligent for failing to adequately warn Plaintiff concerning the requirements under NFPA 86 (2007) for fire suppression on the granola dryer;

28. Defendant is negligent for failing to adequately warn Plaintiff concerning the requirements under FM Global DS 6-9 (2003) for fire suppression on the granola dryer;

29. Defendant is negligent for failing to adequately warn Plaintiff concerning what to do in the event they smell a fire in the dryer by failing to place instructions on the dryer itself;

## III. Defendant's Legal & Factual Defenses

Defendant asserts the following defenses which have been briefed in support of Defendant's Motion for Summary Judgment. Plaintiff denies and resists the defenses on the legal and factual grounds as stated in Plaintiff's previous filings.

*Strict Liability - North Carolina Law*

1. There is no valid claim for strict liability in North Carolina for products liability actions. *Warren v. Colombo*, 377 S.E.2d 249, 255 (N.C. 1989); N.C. Gen. Stat. § 99B-1.1.

*Strict Liability - Nebraska Law*

2. Under Nebraska law, to recover on a claim of strict liability, the plaintiff must prove that:

> (1) the defendant placed the product on the market for use and knew, or in the exercise of reasonable care should have known, that the product would be used without inspection for defects; (2) the product was in a defective condition when it was placed on the market and left the defendant's possession; (3) the defect is the proximate or a proximately contributing cause of the plaintiff's injury sustained while the product was being used in a way and for the general purpose for which it was designed and intended; (4) the defect, if existent, rendered the product unreasonably dangerous and unsafe for its intended use; and (5) the plaintiff's damages were a direct and proximate result of the alleged defect.

6

*Krajewski v. Enderes Tool Co., Inc.*, 469 F.3d 705, 708–09 (8th Cir. 2006).

3. Where a plaintiff had knowledge of a "defect prior to the accident and injury in question, then that plaintiff has no basis for recovery in strict liability." NJI2d Civ. 11.20, Comments & Authorities (emphasis added); *see also Waegli v. Vaterpillar Tractor Co.*, 251 N.W.2d 370, 372 (Neb. 1977) (stating that under Nebraska law, "[t]here is no duty to warn of a known danger.").

4. Defendant claims that Plaintiffs cannot recover for strict liability for design defect because they knew that the Dryer did not have sprinklers and used it anyway.

5. Defendant claims that Plaintiffs cannot recover for strict liability for failure to warn because they knew of the warnings and instructions on the equipment and in the Owner's Manual; were aware of the risk of fire in the dryers based upon years of experience in dealing with such fires; and had successfully employed the warnings and instructions provided by Buhler to extinguish fires in dryers for nineteen years prior to the incident at issue.

*Misuse Defense*

6. [A] misuse defense is available in a products liability case based on a theory of recovery of strict liability." Jay v. Moog Auto, Inc., 652 N.W.2d 872, 885–886 (Neb. 2002).

7. Misuse is a defense if the product's user's actions were unforeseeable and the proximate cause of the damages at issue. *Carlson v. Freightliner LLC*, 226 F.R.D. 343, 358 (D. Neb. 2004).

8. Defendant claims that Richardson misused the dryer when its employees failed to follow the instructions in the Owner's Manual (and those provided by their supervisor), and therefore failed to shut down the dryer and promptly investigate and extinguish the fire, instead allowing the dryer to continue running and failing to investigate the source of the fire for

7
US.111075974.02

approximately ten minutes. Defendant claims that it was unforeseeable that Richardson's employees would fail to follow the instructions in the Owner's Manual and those of their supervisor, when they had done so previously, without incident, for nineteen years.

*Negligent Products Liability - North Carolina Law*

9. Contributory negligence bars recovery in products liability actions. *Nicolson v. Am. Safety Util. Corp.*, 488 S.E.2d 240, 244 (N.C. 1997). The doctrine is codified at N.C. Gen. Stat. § 99B-4; *see also Fontenot v. Taser Int'l, Inc.*, 736 F.3d 318, 327 (4th Cir. 2013). The statute provides that no recovery for negligent product liability can be maintained if:

> (1) The use of the product giving rise to the product liability action was contrary to any express and adequate instructions or warnings delivered with, appearing on, or attached to the product or on its original container or wrapping, if the user knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings; or
>
> (2) The user knew of or discovered a defect or dangerous condition of the product that was inconsistent with the safe use of the product, and then unreasonably and voluntarily exposed himself or herself to the danger, and was injured by or caused injury with that product; or
>
> (3) The claimant failed to exercise reasonable care under the circumstances in the use of the product, and such failure was a proximate cause of the occurrence that caused the injury or damage complained of.

10. Defendant claims Plaintiffs' contributory negligence bars any recovery under North Carolina law. Defendant claims Richardson was negligent when its employees failed to follow the Owner's Manual's instructions provided by Buhler (and the instructions of their supervisor) thus barring a products liability claim under N.C. Gen. Stat. § 99B-4(1).

11. Defendant claims Richardson was negligent when its employees failed to exercise reasonable care by ignoring a smoldering fire for ten minutes, contrary to the Owner's Manual instructions and those of their supervisor, which allowed the fire to grow, which bars their products liability claim under N.C. Gen. Stat. § 99B-4(3).

8

12. Defendant claims Richardson was aware of the lack of internal fire suppression systems and and fire warnings on the dryer itself, yet continued to operate the dryer for five years—including addressing occasional fires that occurred therein—which bars their products liability claim under N.C. Gen. Stat. § 99B-4(2).

*Spoliation Defense*

13. An adverse instruction for spoliation is warranted when: (1) there is "a finding of intentional destruction indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party." *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 879 (8th Cir. 2015).

14. Where litigation is reasonably foreseeable, a plaintiff has a duty to preserve related evidence. *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1319–20 (Fed. Cir. 2011).

15. Defendant claims that the dryer's control systems data provides the only incontrovertible evidence of what happened in the critical minutes from when smoke was first detected to when the fire got out of control. Defendant claims that Plaintiffs failed to save the control systems data. Plaintiff claims that Defendant lacks evidence of intentional destruction.

16. Defendant claims it has been prejudiced by plaintiffs' spoliation of evidence, and that spoliation should preclude plaintiffs from avoiding a finding of contributory fault. Plaintiff claims that Defendant lacks evidence of prejudice.

*Nebraska Law*

17. In order to recover under a negligence theory of products liability under Nebraska law, a plaintiff must establish a duty, a breach, causation, and damages. *Morris v. Chrysler Corp.*, 303 N.W.2d 500, 502 (1981).

18. Where "[t]he duty [plaintiffs] seek to establish cannot be made without reference to the contract, [then] such duties do not exist independent of the contract." *Moglia v. McNeil Co.*, 700 N.W.2d 608, 618 (Neb. 2005).

19. While "one may sue in tort when there has been negligence in the performance of a contract," the appropriate duty to consider in that situation is the "common-law duty to perform with care, skill, reasonable expediency, and faithfulness the thing agreed to be done." *Lincoln Grain, Inc. v. Coopers & Lybrand*, 345 N.W.2d 300, 305 (Neb. 1984).

20. Defendant claims that performance of the contract between Buhler and Richardson was the only duty owed by Buhler. Plaintiff denies that only contractual duties form the basis of tort duties.

21. Defendant claims that it did not breach any duty to provide a fire suppression system with its dryer, because the contract expressly excluded fire suppression systems and compliance with local legal requirements. Richardson was aware that the dryer did not have internal fire suppression. The Nebraska State Fire Marshal inspected and approved Granola Line 2 in 2008 and did not insist that the dryer be equipped with an internal fire suppression system. Plaintiff denies.

22. Regarding plaintiffs' negligent failure to warn claim, "there is no duty to warn if the user knows or should know of the potential danger, especially when the user is a professional who should be aware of the characteristics of the product." *Strong v. E.I. DuPont de Nemours Co., Inc.*, 667 F.2d 682, 687 (8th Cir. 1981).

23. Defendant claims that Buhler owed no duty to warn of fire in the dryer, because Richardson was well aware of the potential for fire, based on previous experience and the instructions in the Owner's Manual. Buhler also owed no duty to warn because Richardson is a

US.111075974.02

professional in the business of manufacturing granola, and knows of the inherent combustibility of grain products.

*Additional Defenses to Plaintiffs' Claims*

24. Defendant claims that if there is any actionable liability of Buhler, the existence of which is denied, Buhler alleges the defense of contributory negligence and/or comparative fault.

25. Defendant claims that it fully performed its duties under the contract between Buhler and Richardson.

26. Defendant claims that Plaintiffs' claims are barred by the doctrine of estoppel with respect to their spoliation of critical control systems evidence.

27. Defendant claims that Plaintiffs' claims are barred by the doctrine of waiver, to the extent that the parties' contract specifically bars claims for incidental or consequential damages, including lost profits.

## Motions in Limine

The parties have filed various motions in limine. Defendant has filed a motion in limine concerning all of Plaintiff's experts. Plaintiff resists. The parties have further filed motions in limine as set forth in the pleadings which will be resisted following the pretrial order.

**(D)** **Witnesses.** All witnesses, including rebuttal witnesses, expected to be called to testify by plaintiff, except those who may be called for impeachment purposes as defined in NECivR 16.2(c) only, are:

**See attached Plaintiff's Witness List.**

All witnesses expected to be called to testify by defendant, except those who may be called for impeachment purposes as defined in NECivR 16.2(c) only, are:

11

**See attached Buhler's Witness List.**

It is understood that, except upon a showing of good cause, no witness whose name and address does not appear herein shall be permitted to testify over objection for any purpose except impeachment. A witness whose only testimony is intended to establish foundation for an exhibit for which foundation has not been waived shall not be permitted to testify for any other purpose, over objection, unless such witness has been disclosed pursuant to Federal Rule of Civil Procedure 26(a)(3). A witness appearing on any party's witness list may be called by any other party.

**(E)  Expert Witnesses' Qualifications.** Experts to be called by plaintiff and their qualifications are:

1. A curriculum vitae of Plaintiff's expert, Ken Scurto, is attached.
2. A curriculum vitae of Plaintiff's expert, Dr. Thomas Schnell, is attached.
3. A curriculum vitae of Plaintiff's expert, James Maness, is attached.

Experts to be called by defendant and their qualifications are:

1. A curriculum vitae of Defendant's expert Richard J. Martin, PhD, PE, CFI, CFPS is attached.
2. A curriculum vitae of Defendant's expert Gavin Huntley-Fenner, PhD is attached.

**(F)  Voir Dire.** Counsel have reviewed Federal Rule of Civil Procedure 47(a) and NECivR 47.2(a) and suggest the following with regard to the conduct of juror examination:

Preliminary voir dire will be conducted by the Court. The parties will have the opportunity for further examination, limited to ~~two~~ one hour~~s~~ per side. In addition to background preliminary questions, areas of inquiry for the Court may include the following:

1. What knowledge or experience do you have with:
    a. Buhler, Inc.
    b. Aeroglide Corporation
    c. Richardson International (U.S.) Limited
    d. Nationwide Agribusiness Insurance Company
    e. ConAgra Foods, Inc.
    f. 21st Century Grain Processors

g. Viterra/Glencore
h. Granola dryers

2. Have you ever worked in an industrial manufacturing facility? Or are you related to anyone that has?
   a. Who did you work for?
   b. What was your job?
   c. Did the company use outside contractors to provide good or services?

3. Have you ever worked with industrial dryers or ovens? In what capacity?
   a. What knowledge or experience do you have with industrial dryers or ovens?

4. What knowledge or experience do you have with grain mills?
   a. Have you ever worked at a grain mill? Has anyone in your family?

5. What knowledge or experience do you have related to fire suppression systems?

6. Has your home or workplace ever experienced a fire that resulted in damage to property?

7. What knowledge or experience do you have with commercial or industrial fires?

8. What knowledge or experience do you have with industrial food production/processing?

9. Does anyone have any degrees, licenses, certificates, or professional experience with:
   a. Fire investigation?
   b. Engineering of manufacturing equipment?
   c. Ergonomics or human factors?

10. Aside from purchasing or consuming it, does anyone have any knowledge or experience with the manufacturing of granola?
    a. Does anyone have any knowledge or experience with the manufacturing of cereal, grains, or other dry goods?

**(G)** **Number of Jurors.** Counsel have reviewed Federal Rule of Civil Procedure 48 and NECivR 48.1 and suggest that this matter be tried to a jury composed of __8__ members.

**(H)** **Verdict.** The parties will not stipulate to a less-than-unanimous verdict.

13

**(I)     Briefs, Instructions, and Proposed Findings.** Counsel have reviewed NECivR 39.2(a), 51.1(a), and 52.1, and suggest the following schedule for filing trial briefs, proposed jury instructions, and proposed findings of fact, as applicable:

The Trial Brief and Proposed Jury Instructions will be filed by May 1, 2017.

[State any special requests. Unless otherwise ordered, trial briefs, proposed jury instructions, and proposed findings of fact shall be filed five (5) working days before the first day of trial.]

**(J)     Length of Trial.** Counsel estimate the length of trial will consume not less than 3 day(s), not more than 12 day(s), and probably about 8 day(s).

**(K)     Trial Date.** Trial is set for May 8, 2017.

Dated:  April 10, 2017

/s/ Nile Hicks
Donald G. Beattie (Iowa Bar #AT0000736)
Nile Hicks (Iowa Bar #AT0009391)
BEATTIE LAW FIRM, P.C.
4300 Grand Ave.
Des Moines IA 50312
Telephone: 5(515) 263-1000
Fax: (515) 263-1411
E-mail: don.beattie@beattielawfirm.com
E-mail: nile.hicks@beattielawfirm.com
(Admitted pro hac vice)

**ATTORNEYS FOR PLAINTIFFS**

| | |
|---|---|
| Dated: April 10, 2017 | *s/ James J. Hartnett* |
| | James J. Hartnett (admitted *pro hac vice*) |
| | Rachel A. Osdoba (admitted *pro hac vice*) |
| | FAEGRE BAKER DANIELS LLP |
| | 2200 Wells Fargo Center |
| | 90 South Seventh Street |
| | Minneapolis, MN 55402-3901 |
| | Telephone: (612) 766-7000 |
| | Fax: (612) 766-1600 |
| | Email: james.hartnett@faegrebd.com |
| | Email: rachel.osdoba@faegrebd.com |
| | |
| | - and – |
| | |
| | Rex A. Rezac #17787 |
| | Elizabeth A. Culhane #23632 |
| | FRASER STRYKER PC LLO |
| | 409 S. 17th Street |
| | 500 Energy Plaza |
| | Omaha, NE 68102 |
| | Telephone: (402) 341-6000 |
| | Fax: (402) 341-8290 |
| | E-mail: rrezac@fraserstryker.com |
| | E-mail: eculhane@fraserstryker.com |
| | |
| | **ATTORNEYS FOR DEFENDANT** |

BY THE COURT:

*[signature]*